IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RANDY FLOWERS,

     Plaintiff,

v.                                          Civ. No. 19-1219 GBW/KRS

UNITED PARCEL SERVICE, INC.,

     Defendant.

## ORDER GRANTING SUMMARY JUDGMENT ON ALL CLAIMS

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment and Memorandum of Law in Support Thereof (*doc. 74*). Having reviewed the Motion and its attendant briefing (*docs. 81, 84, 85*) and being fully advised in the premises, the Court GRANTS the Motion and DISMISSES each of Plaintiff's claims against Defendant WITH PREJUDICE.

## I.   BACKGROUND

In March 2018, Defendant terminated Plaintiff's employment as a Southwest New Mexico Business Manager. *See doc. 1-1* at ¶¶ 6, 18; *doc. 5* at ¶¶ 6, 18. A year and a half later, Plaintiff sued Defendant in the Third Judicial District Court, Doña Ana County, New Mexico, claiming that (i) Defendant had discriminated against him based on his age in violation of the New Mexico Human Rights Act ("NMHRA"); (ii) Defendant had retaliated against him in violation of the NMHRA; and (iii) Defendant

had retaliatorily discharged him in violation of New Mexico common law.  *See doc. 1-1*

at ¶¶ 22-33.  In December 2019, Defendant removed Plaintiff's Complaint to this Court.

*See doc. 1*.

On November 2, 2021, Defendant filed the instant Motion for Summary

Judgment on each of Plaintiff's three claims.  *See doc. 74*.  On November 24, 2021, and

again on November 26, 2021, Plaintiff responded in opposition.  *See docs. 81, 84*.[1]

Briefing was complete on Defendant's Motion on December 10, 2021, with the filing of

Defendant's Reply.  *See docs. 85, 86*.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

movant bears the initial burden of showing "that there is an absence of evidence to

support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d

887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once

the movant meets this burden, the non-moving party is required to designate specific

facts showing that "there are . . . genuine factual issues that properly can be resolved

only by a finder of fact because they may reasonably be resolved in favor of either

---

[1] The two responses are identical. The Court will only cite to the first one.

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 325.

In applying this standard, the court must draw all "reasonable inferences" in the light most favorable to the non-moving party. *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998). Summary judgment is appropriate only "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. UNDISPUTED MATERIAL FACTS ("UMFs")

Based on the parties' briefing and the record as a whole, the Court finds the following facts material and undisputed[2] for purposes of Defendant's Motion for Summary Judgment:

### A. BACKGROUND

1. At all times relevant to Plaintiff's claims, he was the Southwest New Mexico Business Manager for Defendant's Las Cruces facility. Defendant's Statement

---

[2] The parties deny many of each other's statements of fact as misleading, incomplete, or both. *See doc. 81* at 1-13; *doc. 85* at 1-6. Where the Court cites to a party's statement of fact notwithstanding the other party denying it on at least one of these grounds, it does so pursuant to Federal Rule of Civil Procedure 56(c)(1) because the evidence cited by the party for that fact supports the Court's finding and the evidence cited by the other party in denying that fact does not genuinely dispute that finding. Where the Court cites to evidence in the record, it does so pursuant to Federal Rule of Civil Procedure 56(c)(3), which permits consideration of "other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The facts found by the Court omit several of the facts asserted by the parties in their briefing—particularly facts related to Plaintiff changing Kevin Thompson's timecard and asking Christopher Rivera and Patrick Wood to work on leave—since these facts are not material to the Court's inquiry.

of Fact ("DSF") 2; Plaintiff's Statement of Fact ("PSF") 2; *doc. 1-1* at ¶ 6; *doc. 5* at ¶ 6; *doc. 74-1* at 32:25-33:5.

2. At all times relevant to Plaintiff's claims, his supervisor was Division Manager Jerwin Burke.  *See doc. 74-1* at 30:20-24.

3. At all times relevant to Plaintiff's claims, he supervised Patrick Wood and Christopher Rivera.  DSF 39; *see also doc. 74-1* at 32:14-24.

B. FABRICATION OF TRAINING RECORDS FOR AUDIT OF LAS CRUCES FACILITY

5. Defendant employs Keter Consulting to conduct unannounced audits at randomly selected facilities.  DSF 4; *see also* PSF 3 (admitting that Keter audits Defendant's facilities); *doc. 74-14* at ¶ 4.

6. These audits include an evaluation of records for space and visibility rides ("S&Vs") and other safety trainings that Defendant's employees must complete annually.  DSF 5; PSF 5; *see also doc. 74-1* at 46:17-47:15; *74-14* at ¶ 4.

7. On August 3, 2017, Trisha Muñoz, a Southeastern New Mexico Business Manager for Defendant's Clovis facility, notified Plaintiff that Keter was going to audit the Las Cruces facility later that day.  DSF 3, 6; PSF 6.

8. After receiving this notice, Plaintiff called Mr. Burke who instructed him to go to the Las Cruces facility and prepare it for the audit.  DSF 8; PSF 8.

9. Plaintiff travelled to the Las Cruces facility for the audit.  DSF 9; PSF 9.

10. Plaintiff contacted Mr. Rivera and Mr. Wood and asked them to come to the Las Cruces facility to help prepare it for the audit.  DSF 12, 14; PSF 12, 14.

11. At this time, the safety dashboard for the Las Cruces facility contained "exceptions" indicating that Michael Rodriguez, King Wong, Robert Zarate, and other employees at this facility had not conducted S&Vs and other safety trainings within the last year.  DSF 10-11; *see also doc. 74-4* at 38-48.

12. Plaintiff tasked Ms. Muñoz with "cleaning up" the safety dashboard.  *See* PSF 16; *doc. 74-2* at 19-20, 22.

13. Plaintiff tasked Mr. Rivera and Mr. Wood with creating S&V records necessary to clear some exceptions from the dashboard.  *See, e.g., doc. 74-1* at 65:19-66:22; *doc. 74-2* at 12, 42-43; *doc. 74-3* at 15.[3]

14. Mr. Rivera and Mr. Wood created S&V records for Mr. Rodriguez, Mr. Wong, and Mr. Zarate and forged these drivers' signatures on these records.  *Doc. 74-2* at 25, 33, 44.

15. Mr. Rivera and Mr. Wood gave these S&V records to Plaintiff.  DSF 18; *see also* PSF 18 (admitting that "Plaintiff was presented the paperwork by Wood and Rivera …"); *doc. 74-1* at 67:14-18; *doc. 74-2* at 43; *doc. 74-3* at 15.

---

[3] Plaintiff's specific instructions to Mr. Rivera and Mr. Wood about creating S&V records are matters of dispute.  Plaintiff claims that he instructed Mr. Rivera and Mr. Wood to recreate records for S&V rides that had been completed previously if records for these rides could not be found.  *See, e.g.*, PSF 20. Defendant claims that Plaintiff instructed Mr. Rivera and Mr. Wood to fabricate these records.  *See doc. 74* at 16, 18, 21.  The actual content of Plaintiff's instructions, though, is immaterial to the Court's inquiry and the Court makes no finding on this issue.

16. When Plaintiff received these records, he knew that Mr. Wood and Mr. Rivera had created them on the date of the audit, rather than the dates stated therein. DSF 19; *see also doc. 74-1* at 66:2-67:5.

17. The S&V records for Mr. Rodriguez, Mr. Wong, and Mr. Zarate were included in the binder presented to Keter for the audit.  DSF 22; PSF 22.

18. On August 4, 2017, Mr. Rivera informed Ms. Muñoz that she needed to remove the S&V records for Mr. Rodriguez, Mr. Wong, and Mr. Zarate from the audit binder and destroy them because he and Mr. Wood had falsified them.  *See doc. 74-2* at 20, 25, 27, 44-45; *doc. 74-3* at 8.

C.  DEFENDANT'S INVESTIGATION OF PLAINTIFF

19. On August 7, 2017, Mr. Rivera reported to Dawn Eaglesmith, a Human Resources Officer for Defendant, that Plaintiff had instructed him and Mr. Wood to make false S&V records for the Keter audit.  DSF 24; *see also doc. 74-2* at 36, 45-46; *doc. 74-4* at 19.[4]

20. Defendant investigated this report, and tasked Human Resources and Security personnel, including Desert Mountain District Human Resource

---

[4] Plaintiff denies DSF 24 based on evidence that, per instructions he received from Mr. Burke, he instructed Mr. Rivera and Mr. Wood to recreate records for S&V rides that had been previously completed and that recreating these records did not violate Defendant's integrity policy.  *See* PSF 24 (citing to *doc. 81-1* at 65:10-67:21, 76:10-78:24, *doc. 81-3* at 1-2, and *doc. 81-5* at 9-17).  Whether Plaintiff directed subordinates to fabricate records is a separate issue from whether employees reported him for issuing such a directive.  Therefore, Plaintiff has not borne his burden of producing evidence disputing DSF 24.

Operations Manager Glenn Mickelson, Security Supervisor Leo Lane, and

Desert Mountain District Security Director Matt Woodruff, with conducting

this investigation.  DSF 26-27; PSF 26-27; *see also doc. 74-2* at 2-38.

21. During the investigation, Mr. Lane, Mr. Mickelson, Mr. Woodruff, and other

members of Defendant's personnel interviewed Plaintiff, Mr. Burke, Ms.

Muñoz, Mr. Rivera, Mr. Wood, and other employees.  *See doc. 74-2* at 5-35.

22. During his interviews and in a written statement, Mr. Rivera stated the

following: (i) Plaintiff had directed him and Mr. Wood to meet with drivers

for whom there were not S&V records and use their personal skills to get

them to complete the records; (ii) the training rides for these S&V records had

not occurred; (iii) he and Mr. Wood had informed Plaintiff that they could not

reach drivers to obtain their signatures on these records; (iv) Plaintiff had

instructed him and Mr. Wood to do what they had to do to complete training

records for them; (v) he and Mr. Wood had expressed their discomfort with

this instruction to Plaintiff; and (vi) he and Mr. Wood had told Plaintiff that

they had forged signatures for Mr. Rodriguez, Mr. Wong, and Mr. Zarate

when they gave records for these drivers' S&V rides to him.  *See doc. 74-2* at

25-28, 43-44.

23. During his interviews and in a written statement, Mr. Wood stated the

following: (i) on the day of the Keter audit, he did not have any outstanding

paperwork for previously completed S&V rides because records for these

trainings are completed the day of the training; (ii) Plaintiff had directed him

and Mr. Rivera to create S&V records for Mr. Rodriguez, Mr. Wong, and Mr.

Zarate; (iii) he and Mr. Rivera informed Plaintiff that these drivers had not

completed S&V rides; (iv) Plaintiff instructed him and Mr. Rivera to use their

relationships with the drivers to get the drivers to sign records for S&V rides;

and (v) he had informed Plaintiff that he did not feel comfortable with this

instruction.  *See id.* at 32-34, 43-44; *doc. 74-3* at 15.

24. During her initial interviews on August 7 and 8, 2017, Ms. Muñoz explained

that she had interpreted Plaintiff's instruction to clean up the safety

dashboard to "fix it so it looks good" and denied that Mr. Rivera had

informed her that audit binder contained false S&V records and requested

her to remove these records from the binder.  *See doc. 74-2* at 19-21.

25. During subsequent interviews on August 9 and 10, 2017, and in written

statements, Ms. Muñoz admitted to not being completely honest during her

initial interviews, clarified that Mr. Rivera had informed her on August 4,

2017, that the audit binder contained S&V records that he and Mr. Wood had

falsified, and explained that she had not removed these records from the

binder as Mr. Rivera had requested or disclosed these records' falsification to

8

Mr. Burke or Defendant's Human Resources and Security personnel. *See id.* at 20, 22-23; *doc. 74-3* at 5, 8.

26. During subsequent interviews on August 9 and 10, 2017, and in written statements, Ms. Muñoz also stated that, during the audit, Plaintiff had requested her to go to the homes of employees whose Safe Work Method ("SWM") trainings were outstanding according to the security dashboard and complete records for these trainings. *See doc. 74-2* at 22; *doc. 74-3* at 9.

27. During her interview and in a written statement, Patricia Frausto, a supervisor, stated the following: (i) she had seen incomplete S&V paperwork on Mr. Wood's desk a month or so before the audit; (ii) Plaintiff had instructed her, Mr. Wood, and Mr. Rivera to look for missing S&V records; (iii) Plaintiff had informed her, Mr. Wood, and Mr. Rivera that it was okay to recreate records for previously completed S&V rides; (iv) Plaintiff had explained it may be necessary to go to other employees' homes to get their signatures on records of SMV trainings; and (v) Plaintiff had not instructed her to falsify any safety training records. *See doc. 74-2* at 17; *doc. 74-3* at 24.

28. During his interviews, Plaintiff stated the following: (i) Mr. Wood had outstanding paperwork for previously completed S&V trainings the day of the audit; (ii) Mr. Burke had instructed Plaintiff to recreate S&V and other training records for previously completed trainings if records for them could

not be found; (iii) pursuant to this instruction, he had directed Mr. Rivera and

Mr. Wood to create drivers' S&V records for previously completed rides by

reviewing these records with drivers and having the drivers sign them; (iv)

he had not instructed Mr. Rivera and Mr. Wood to do whatever it took to

create S&V records; (v) he had not instructed Ms. Muñoz to go to employees'

homes to complete records for SWM trainings; and (vi) neither Mr. Rivera nor

Mr. Wood had expressed discomfort to him about his instructions, informed

him that they had could not reach drivers to get the drivers' signatures, told

him that they had forged the drivers' signatures on the records they gave

him, or communicated to him that the S&V rides for these records had not

been done.  *See* DSF 31-32; PSF 31-32; *doc. 74-2 at 9-15.*

29. During his interview, Mr. Burke denied instructing Plaintiff to create records

for S&V rides and other previously completed trainings.  *See* DSF 33; *doc. 74-2*

*at 5.*[5]

30. At the end of the investigation, Mr. Lane concluded that Plaintiff had violated

Defendant's integrity policy by directing subordinates to falsify training

---

[5] Plaintiff denies DSF 33 based on evidence (his deposition testimony) that Mr. Burke instructed him to recreate S&V and SWM records.  *See* PSF 33 (citing *doc. 81-1* at 65:10-67:21).  Whether Mr. Burke instructed Plaintiff to recreate these records is a separate factual issue from whether Mr. Burke denied giving Plaintiff this instruction when asked about it during Defendant's investigation.

records to avoid an unsatisfactory score during the Keter audit.  *See doc. 74-2* at 2, 16, 36-37; *doc. 81-8* at 29:1-30:10, 31:15-32:25.

31. At the end of the investigation, Mr. Mickelson credited the statements of Mr. Wood and Mr. Rivera over those of Plaintiff, concluded that Plaintiff had violated Defendant's integrity policy by directing subordinates to forge or falsify safety training records, and recommended to Daniel Moore, the Human Resources Manager for the division containing Southern New Mexico, that Plaintiff's employment be terminated.  *See doc.* 81-7 at 17:16-19, 24:14-25:1, 28:10-15.

32. After receiving Mr. Mickelson's recommendation, Mr. Moore reviewed the investigative records, credited Mr. Wood's and Mr. Rivera's version of events over that of Plaintiff, concluded that Plaintiff had directed Mr. Wood and Mr. Rivera to fabricate S&V records, and recommended that Defendant terminate Plaintiff's employment.  *See doc. 74-14* at ¶¶ 12-13.

D.  PLAINTIFF'S TERMINATION

33. During Plaintiff's interview with Mr. Woodruff on August 10, 2017, he reported being subject to age discrimination.  PSF C; *see also doc. 81-1* at 149:9-11.

34. On August 10, 2017, Defendant placed Plaintiff on paid administrative leave. DSF 25; PSF 25.

35. In September 2017, Plaintiff filed corporate complaints with Defendant about age discrimination and a hostile work environment.  PSF C; *see also doc. 81-1* at 148:24-149:15.

36. On October 10, 2017, Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC").  DSF 47; PSF 47.

37. On March 27, 2018, Defendant terminated Plaintiff's employment.  DSF 48; PSF 48.

38. At the time of his termination, Plaintiff was 52 years old.  DSF 49; PSF 49.

E.  TREATMENT OF OTHER EMPLOYEES

39. During the investigation, Mr. Lane and Mr. Mickelson found that Mr. Rivera and Mr. Wood's actions during the Keter audit had violated Defendant's integrity policy.  *See doc. 81-7* at 19:11-14; *doc. 81-8* at 30:20-31:7.

40. Defendant did not discipline Mr. Rivera or Mr. Wood for these actions.  *See doc. 74-2* at 2-38.

41. During the investigation, Mr. Wood disclosed that during the Keter audit Tony Sedillo, a New Mexico CHSP supervisor, had requested him to re-sign records for hazmat training that he had completed earlier that year.  *See* PSF D; *doc. 74-2* at 34; *doc. 74-3* at 16.

42. Defendant did not discipline Mr. Sedillo for making this request.  *See doc. 74-2* at 2-38.

43. Defendant demoted Ms. Muñoz from a Southeastern New Mexico Business Manager to a supervisor after finding that she had violated its integrity and disclosure policies by not being forthcoming about her knowledge of the fabricated S&V records during her initial interviews.  *See doc. 74-2* at 23, 36.

F.  PLAINTIFF'S REPLACEMENT

44. In June 2017, Karl Walter, a Business Manager from Defendant's facility in Chantilly, Virginia requested an internal transfer to New Mexico as a trailing spouse.  *See* DSF 51-52; PSF 51; *doc. 75-1* at ¶¶ 4-5.

45. In September 2017, Defendant approved Mr. Walter's transfer.  DSF 53; PSF 53.

46. Mr. Walter assumed Plaintiff's responsibilities as a Southwest New Mexico Business Manager for the Las Cruces facility while Plaintiff was on administrative leave.  DSF 55; PSF 55.

47.  After Defendant terminated Plaintiff, Mr. Walter replaced Plaintiff as a Southwest New Mexico Business Manager for the Las Cruces facility.  DSF 56; PSF 56.

48. At the time of replacement, Mr. Walter was forty years old.  DSF 56; PSF 56.

**IV. ANALYSIS**

Based upon the undisputed material facts found above, Defendant is entitled to judgment as a matter of law on Plaintiff's statutory claims of age discrimination and

retaliation in violation of the NMHRA and tort claim of retaliatory discharge in violation of New Mexico common law.

## A. NEW MEXICO HUMAN RIGHTS ACT

The NMHRA prohibits employers like Defendant from "discriminat[ing] in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of … age" or "engag[ing] in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or filed a complaint, testified or participated in any proceeding under the Human Rights Act."  N.M. Stat. Ann. §§ 28-1-7(A), (I)(2); *see also Juneau v. Intel Corp.*, 127 P.3d 548, 552 (N.M. 2005) (clarifying that "[p]rohibited acts of 'threats, reprisal or discrimination' are considered together under the general label of unlawful retaliation" (quoting N.M. Stat. Ann. § 28-1-7(I)(2))).

Discrimination and retaliation may be shown by either direct or circumstantial evidence.  *See Martinez v. Yellow Freight Sys., Inc.*, 826 P.2d 962, 965 (N.M. 1992).  In the latter scenario, the New Mexico Supreme Court has adopted the *McDonnell Douglas* framework for assessing whether sufficient evidence exists for a factfinder to infer that discrimination or retaliation was a motivating factor for adversely treating an employee.  *See Smith v. FDC Corp.*, 787 P.2d 433, 436 (N.M. 1990) (discrimination); *Juneau*, 127 P.3d at 551 (retaliation).  It has cautioned, though, that its reliance on this framework "should not be interpreted as an indication that [it] ha[s] adopted federal

law as [its] own" or that it is "binding New Mexico law to interpretations made by the federal courts of [analogous federal laws]." *Smith*, 787 P.2d at 436; *see also Garcia v. Hatch Valley Pub. Schs.*, 458 P.3d 378, 384 (N.M. 2018) ("[I]nterpretations of federal law are merely persuasive.").[6]

In cases like this one where the record lacks direct evidence of discrimination or retaliation, the *McDonnell Douglas* framework prescribes a three-step process during which the burden of production oscillates back and forth between the parties. At step one, Plaintiff bears the burden of making a prima facie case for discrimination or retaliation, which creates a presumption that discrimination or retaliation occurred. *See Garcia*, 458 P.3d at 386 (discrimination); *Juneau*, 127 P.3d at 551-52 (retaliation). At step two, the burden shifts to Defendant to rebut the presumed discrimination or retaliation, by producing evidence of a legitimate reason for terminating Plaintiff. *See Garcia*, 458 P.3d at 386; *Juneau*, 127 P.3d at 555. Finally, at step three, "the burden [of production] shifts back to Plaintiff to show the justification is merely pretext for a retaliatory [or discriminatory] motive." *Juneau*, 127 P.3d at 555; *see also Garcia*, 458 P.3d at 388-89. "The ultimate burden of persuading the trier of fact that … [D]efendant intentionally

---

[6] In this order, the Court cites several cases that apply federal equivalents of the NMHRA to situations analogous to the one at bar because New Mexico courts do not appear to have applied the NMHRA to situations like this one and it believes that New Mexico Supreme Court would find these cases persuasive. *See Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002))).

discriminated [or retaliated] against … [P]laintiff remains at all times with … [P]laintiff."  *See Garcia-Montoya v. State Treasurer's Off.*, 16 P.3d 1084, 1099 (N.M. 2001).

Applying the *McDonnell Douglas* framework, the Court finds the evidence before it insufficient to support an inference that Defendant discriminated or retaliated against Plaintiff when terminating his employment.  Assuming without deciding that Plaintiff has established prima facie cases for discrimination and retaliation, the Court concludes that Defendant has provided a legitimate reason for Plaintiff's termination and that Plaintiff has failed to produce evidence that would allow a reasonable fact finder to conclude that the proffered reason is pretext for discrimination or retaliation.

1. *Validity of Defendant's Asserted Reason for Terminating Plaintiff*

Defendant has proffered a valid justification for terminating Plaintiff: its investigation of reports that Plaintiff had instructed subordinates to fabricate S&Vs records for the Keter audit concluded that Plaintiff had ordered his supervisees to create false records, and that this conduct violated the company's integrity policy.  *See Flores v. City of Farmington*, No. 21-2021, 2021 WL 5873151, at *1, *6-7 (10th Cir. Dec. 13, 2021) (holding under the NMHRA that the employer's conclusion, after an investigation, that an employee violated the employer's policies is a valid justification for adverse employment action against the employee).

2. *Pretext*

Plaintiff has failed to produce evidence that the justification provided by Defendant for his termination is a pretext for discrimination or retaliation.  "[W]hether a proffered justification is legitimate, or is merely an excuse to cover up illegal conduct, is largely a credibility issue and often requires the use of circumstantial evidence." *Juneau*, 127 P.3d at 555.  Such circumstantial evidence includes evidence that the proffered justification itself is false as a factual matter or that employees similarly situated to Plaintiff have not been terminated despite committing similar conduct.  *See Garcia-Montoya*, 16 P.3d at 1099-1101; *Smith*, 787 P.2d at 438.  None of the four bodies of evidence to which Plaintiff directs the Court—in isolation or combination—is sufficient for a factfinder to infer that Defendant's stated reason for terminating Plaintiff is pretext for age discrimination or retaliation.

First, Plaintiff collaterally attacks the findings of Defendant's investigation by producing evidence of the following: (i) Plaintiff had permission from Mr. Burke to recreate S&V records for rides that drivers had previously completed; (ii) Plaintiff directed Mr. Wood and Mr. Rivera to review previously completed S&Vs with drivers and have the drivers sign the records for these safety trainings; (iii) retroactively creating records for previously completed S&Vs does not violate Defendant's integrity policy; and (iv) Defendant did not consider Mr. Wood's and Mr. Rivera' prior violations of Defendant's integrity policy when evaluating their statements about Plaintiff's

conduct.  *See doc. 81* at 28-29 (citing *doc. 81-1* at 65:14-67:21, 76:10-78:24, *doc. 81-3, doc. 81-4, doc. 81-5* at 49:9-17, *doc. 81-7* at 26:19-27:15, and *doc. 81-8* at 41:14-42:7).[7]  By itself, though, evidence that Defendant's investigation may have reached incorrect conclusions about Plaintiff's conduct and whether that conduct violated its integrity policy does not provide a reasonable factfinder with a sufficient basis to infer that Defendant's asserted reason for terminating Plaintiff is pretextual.  *See Flores*, 2021 WL 5873151, at *6-7; *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (applying federal law) (finding that a plaintiff did not establish pretext where the employer had discharged him after investigating another employee's allegations of the plaintiff's misconduct and finding them to be true and the plaintiff produced evidence that the allegations may have been false).  "Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility" or otherwise pretextual.  *Dewitt v. Sw. Bell Tele. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (applying federal law).  "[T]he NMHRA protects against discriminatory [and retaliatory] treatment, not against … employer unfairness" like investigatory error.  *See Garcia*, 458 P.3d at 389.

---

[7] Plaintiff's briefing cites to PSFs. For ease of reference, the Court has treated the citations to PSFs as citations to the evidence cited in those PSFs.

Second, Plaintiff directs the Court to evidence that Defendant did not terminate Mr. Wood or Mr. Rivera for fabricating documents or Mr. Sedillo for ordering Mr. Wood to re-sign a record for a previously completed safety training. *See doc. 81* at 29-30. "[W]here a similarly-situated employee commits a similar act and is not disciplined in the same manner, an inference of pretext can be derived." *Gomez-Leon v. AT & T Mobility LLC*, No. 33,912, 2015 WL 2329359, at *1 (N.M. Ct. App. Apr. 22, 2015) (citing *Smith*, 787 P.2d at 438). To be similarly situated to Plaintiff, another employee's conduct must offer "some basis for meaningful comparison of Plaintiff's job performance." *Garcia*, 458 P.3d at 388. The conduct does not have to be a "carbon copy" of that committed by Plaintiff. *See id.* at 387-88.

There is no evidence, though, that Mr. Wood, Mr. Rivera, or Mr. Sedillo have committed conduct comparable to directing subordinates to fabricate records of safety trainings such that an inference of pretext may reasonably be inferred from Defendant not terminating them. Mr. Wood and Mr. Rivera forged drivers' signatures on training records, *see* UMF 14; they did not direct subordinates to do so. A manager directing subordinates to fabricate documents is materially different from subordinates doing so at their manager's direction.

As for Mr. Sedillo, the only evidence in the record about his conduct is that he requested Mr. Wood to re-sign paperwork for a previously completed training. *See* UMF 41. Plaintiff insists that his instructions to Mr. Wood and Mr. Rivera mirrored

those that Mr. Sedillo gave to Mr. Wood. *See doc. 81* at 30. However, the conduct that is the object of comparison in a similarly situated employee analysis is that which Defendant believed Plaintiff to have committed when it terminated him, not that which Plaintiff contends that he committed. Defendant, acting through Mr. Mickelson and Mr. Moore, concluded that Plaintiff did not merely direct subordinates to recreate paperwork for previously conducted safety trainings. *See* UMFs 31, 32 (rejecting Plaintiff's version of the events). Crediting Mr. Wood's and Mr. Rivera's statements over those of Plaintiff, Mr. Mickelson and Mr. Moore concluded that Plaintiff directed Mr. Wood and Mr. Rivera to fabricate[8] S&V paperwork. *Id*. Instructing subordinates to fabricate safety training records, whether by forging signatures on these records or creating records for trainings that had not been completed, is distinct from asking a subordinate to re-sign his name on a recreated record for a previously completed training. Mr. Sedillo, therefore, is not similarly situated to Plaintiff.

Third, Plaintiff cites the temporal proximity between his termination and his reports of discrimination as evidence that Defendant's justification for his termination is

---

[8] The Court recognizes that Mr. Mickelson stated in his deposition that re-creating documents for previously completed trainings constitutes forging documents and a violation of Defendant's policies, *see doc. 81-7* at 26:6-27:15, and that Mr. Moore stated in his affidavit that re-creating safety training records violates Defendant's policies, *see doc. 74-14* at ¶¶ 7-8. Neither general statement, though, creates a factual issue about what conclusion Mr. Mickelson and Mr. Moore (and thus Defendant) reached about Plaintiff's conduct, i.e., whether they concluded that Plaintiff directed his subordinates to recreate documents for previously conducted trainings and use the verbs "forge," "fabricate," and "falsify," as inclusive of this conduct. Both Mr. Mickelson and Mr. Moore expressly rejected Plaintiff's description of his conduct when concluding that he directed subordinates to fabricate documents and adopted his subordinates' version of events. *See* UMFs 31-32.

a pretext for retaliation.  *See doc. 81* at 27.  Temporal proximity is primarily relevant to

whether Plaintiff has established a prima facie case of retaliation.  *See Juneau*, 127 P.3d at

554.  Its relevance to the pretext analysis is less clear.  It is possible that in cases where

the proffered justification for termination is weak, an especially blatant temporal

proximity could support a finding of pretext.  Here, however, where the salient

investigation began before Plaintiff's claims of discrimination and the investigation

proceeded in a principled and reasonable fashion, the temporal proximity falls far short

of establishing a genuine issue of fact as to pretext.  *See, e.g., Anderson v. Coors Brewing

Co.*, 181 F.3d 1171, 1180 (10th Cir. 1999) (applying federal law) (holding that temporal

proximity does not overcome a legitimate proffered reason for termination backed by

evidence).

      Finally, Plaintiff cites Defendant's decision to have a younger employee move

into his position as Business Manager[9] as evidence that Defendant's justification for his

termination is a pretext for age discrimination.  *See doc. 81* at 30.  This fact merely

---

[9] Plaintiff mentions that Defendant moved Mr. Walter into Plaintiff's position as Business Manager "prior
to Defendant's investigation being completed and Plaintiff's termination."  *See doc. 81* at 30.  Plaintiff does
not develop this point or even argue that this timing reflects a sham investigation.  Thus, any such
argument is waived.

      Moreover, Plaintiff's language elides the distinction between temporarily exercising the
responsibilities of a managerial position and being promoted into the managerial position.  Mr. Walter
became the acting Business Manager for the Las Cruces facility a few weeks after Defendant placed
Plaintiff on administrative leave for the pendency of an investigation triggered by a report that Plaintiff
had ordered subordinates to falsify training records.  *See* USFs 19, 20, 34, 45, 46.  Mr. Walter did not
formally or officially replace Plaintiff in this position until the investigation—which lasted several months
and included multiple interviews of Plaintiff and numerous other employees—had concluded, and
Plaintiff had been terminated.  *See* USF 47.

satisfies one element of one mechanism by which Plaintiff can establish a prima facie case of age discrimination.  *See Smith*, 787 P.2d at 437 (holding that, in some instances, the fourth element of prima facie case of discrimination is whether someone from outside the employee's protected class filled the employee's position); *Garcia*, 458 P.3d at 387 (holding that where an employer has terminated an employer for misconduct and has not replaced the employee with another employee from outside the protected class, "the fourth element of the prima facie case must be modified to permit Plaintiff to show that '[he] was dismissed purportedly for [conduct] nearly identical to [the conduct of] one outside of the protected class who was nonetheless retained'" (quoting *Smith*, 787 P.2d at 437)).  It says nothing about whether the proffered justification was pretextual. Indeed, if Plaintiff's approach were accepted, establishment of a prima facie case would swallow the pretextual analysis laid out in *McDonnell Douglas* for assessing evidence of discriminatory intent.

B.  RETALIATORY DISCHARGE TORT CLAIM

Independent of the NMHRA, New Mexico law recognizes "[t]he tort of retaliatory discharge … as an exception to the traditional rule that an employee at will may be discharged without cause."  *Gandy v. Wal-Mart Stores, Inc.*, 872 P.2d 859, 860 (N.M. 1994).  "Under this cause of action, an employee must (1) identify a specific expression of public policy which the discharge violated; (2) demonstrate that he or she acted in furtherance of the clearly mandated public policy; and (3) show that he or she

was terminated as a result of those acts." *Sherrill v. Farmers Ins. Exch.*, 374 P.3d 723, 727 (N.M. Ct. App. 2016). But where an employee's discharge does "not violate the [NMHRA], [his] claim of wrongful discharge in violation of public policy must fail." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 341 (N.M. 2001). Therefore, the Court's finding that Defendant is entitled to judgment as a matter of law on Plaintiff's NMHRA claims disposes of his claim for retaliatory discharge.

## V. CONCLUSION

Defendant and Plaintiff disagree—and have produced conflicting evidence—about whether Plaintiff directed his subordinates to fabricate safety records in violation of Defendant's integrity policy. The issue before the Court, though, is not whether Defendant's investigation of Plaintiff's conduct reached the correct conclusion. Rather, the issue is whether, given the undisputed material facts about Defendant's investigation and Plaintiff's conduct, Defendant is entitled to judgment as a matter of law on Plaintiff's claims of age discrimination, retaliation, and retaliatory discharge. Here, the Court's role is "not to act as a super personnel department [that] second guess[es] employers' honestly held (even if erroneous) business judgments." *Dewitt*, 845 F.3d at 1308 (applying federal law). Rather, it is to assess whether, given the undisputed material facts, a rational factfinder may find that Defendant acted with discriminatory or retaliatory intent when terminating Plaintiff. The undisputed

material facts preclude such a finding, so Defendant is entitled to summary judgment on all Plaintiff's claims.

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (*doc. 74*) is GRANTED and that Plaintiff's Complaint for Employment Discrimination on the Basis of Age and Retaliation and all the claims therein are DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**